1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10                   ----oo0oo----

11

12   LOREN SCOTT,                    NO. CIV. 2:10-1654 WBS DAD

13          Plaintiff,
                                     MEMORANDUM AND ORDER RE:
14      v.                           MOTION FOR SUMMARY JUDGMENT

15   KELKRIS ASSOCIATES, INC. dba
     CREDIT BUREAU ASSOCIATES,
16
            Defendant.
17   _____/

18

19                   ----oo0oo----

20          Plaintiff Loren Scott brought this action against

21   defendant Kelkris Associates, Inc., dba Credit Bureau Associates

22   arising out of defendant's allegedly improper service of

23   plaintiff in a debt collection action.  Presently before the

24   court is defendant's motion for summary judgment pursuant to

25   Federal Rule of Civil Procedure 56.

26   I.   Factual and Procedural Background

27          Defendant was assigned a debt that was allegedly owed

28   by plaintiff to Travis Credit Union.  Defendant filed a debt

                              1

1  collection suit against plaintiff in the Superior Court of

2  California for Sacramento County on January 23, 2009.  (Compl.

3  6, Ex. B.)  Defendant hired a licensed process server, Moe's

4  Process Serving ("Moe's"), to serve plaintiff with the summons

5  and complaint.  (Id. Ex. C; O'Brien Decl. ¶ 4.)  The address that

6  defendant had on file for plaintiff was 3660 Scorpio Drive,

7  Sacramento, California.  When Moe's attempted to serve plaintiff

8  at this address, the process server was told that plaintiff did

9  not live at that address and the resident did not know plaintiff.

10 (O'Brien Decl. ¶ 5.)

11         Defendant attempted to find an updated address for

12 plaintiff and identified 8624 Culpepper Drive, Sacramento,

13 California, as the most recent address listed on plaintiff's

14 credit report.  (Id. ¶ 6.)  Defendant then cross-checked the

15 address through a service called Accurint, which indicated that

16 there were residents at that address with the same last name as

17 plaintiff.  (Id. ¶ 7.)  Defendant believed that plaintiff was

18 likely living with his family and provided the Culpepper address

19 to Moe's for process serving.  (Id. ¶¶ 8-9.)

20         Plaintiff had previously lived at 8624 Culpepper Drive,

21 (Steinheimer Decl. Ex. B ("Pl.'s Dep.") at 7:17-8:5 (Docket No.

22 17)), but did not inform Travis Credit Union or defendant when he

23 moved to a new residence, (id. at 37:8-21).

24         Moe's attempted to serve plaintiff at the Culpepper

25 address.  (Abegglen Decl. Ex. A (Docket No. 17).)  On the first

26 two attempts there was no one at home.  On the third attempt, the

27 process server was told by plaintiff's father, Lewis Scott, that

28 plaintiff was not available at that time.  (Id. ¶ 3, Ex. A.)

2

1        The process server attempted to effectuate substitute

2   service of the summons and complaint by leaving a copy of the

3   sommons and complaint with plaintiff's father.  (Id.)  Lewis

4   Scott did not tell the process server that plaintiff did not live

5   with him.  (Id. ¶ 3.)

6        Moe's then mailed a copy of the summons and complaint

7   to the Culpepper address.  (Id. ¶ 4, Ex. A.)  This copy of the

8   summons and complaint was not returned in the mail.  (Id. ¶ 4.)

9   Moe's did not inform defendant that service had not been properly

10  effectuated on plaintiff.  (Id. ¶ 5; O'Brien Decl. ¶¶ 9-10.)

11  Defendant alleges that at the time of the attempted substitute

12  service, it believed that plaintiff lived at the Culpepper

13  address.  (O'Brien Decl. ¶¶ 9-10.)

14       Plaintiff's father never informed plaintiff that he had

15  been served with a lawsuit.  (Pl.'s Dep. at 25:3-7.)  When

16  plaintiff later asked his father whether he had received the

17  lawsuit, his father told him that did not remember receiving the

18  complaint or summons.  (Id. at 25:8-22.)

19       Default judgment was entered against plaintiff on May

20  15, 2009.  (Compl. ¶ 8.)  Plaintiff only learned about the suit

21  on December 10, 2009, when he received a letter from the County

22  of Sacramento Department of Finance informing him of an Earnings

23  Withholding Order obtained against him.  (Pl.'s Dep. at 11:2-22.)

24  Plaintiff then contested the default judgment, which the Superior

25  Court vacated "on the ground of inadvertence and excusable

26

27

28

1  neglect."[1]  (Friedman Decl. Ex. A (Docket No. 18).)

2            After learning about the suit brought by defendant in

3  state court, plaintiff discussed the suit with his family,

4  friends, and coworkers.  (Pl.'s Dep. at 33:24-34:17.)

5            Plaintiff then brought this suit alleging violations of

6  §§ 1692b(1)-(2), 1692c(b), 1692d, 1692e, 1692e(10), and 1692f of

7  the federal Fair Debt Collection Practices Act ("FDCPA"), 15

8  U.S.C. § 1692 et seq., and § 1788.12(b) and § 1788.14(a) of the

9  California Rosenthal Fair Debt Collection Practices Act

10 ("Rosenthal Act"), Cal. Civ. Code § 1788 et seq.

11 II.  Discussion

12           Summary judgment is proper "if the movant shows that

13 there is no genuine dispute as to any material fact and the

14 movant is entitled to judgment as a matter of law."  Fed. R. Civ.

15 P. 56(a).  A material fact is one that could affect the outcome

16 of the suit, and a genuine issue is one that could permit a

17 reasonable jury to enter a verdict in the non-moving party's

18 favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

19 (1986).  The party moving for summary judgment bears the initial

20 burden of establishing the absence of a genuine issue of material

21 fact and can satisfy this burden by presenting evidence that

22 negates an essential element of the non-moving party's case.

23 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

24 Alternatively, the moving party can demonstrate that the

25 non-moving party cannot produce evidence to support an essential

26 _____

27       [1]    The state court's tentative ruling on plaintiff's
   motion to set aside the default judgment stated that "[d]efendant
   has shown he was never served with the summons and complaint."
28 (Friedman Decl. Ex. A.)

4

1 element upon which it will bear the burden of proof at trial.

2 Id.

3      Once the moving party meets its initial burden, the

4 burden shifts to the non-moving party to "designate 'specific

5 facts showing that there is a genuine issue for trial.'"  Id. at

6 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

7 the non-moving party must "do more than simply show that there is

8 some metaphysical doubt as to the material facts."  Matsushita

9 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

10 "The mere existence of a scintilla of evidence . . . will be

11 insufficient; there must be evidence on which the jury could

12 reasonably find for the [non-moving party]."  Anderson, 477 U.S.

13 at 252.

14      In deciding a summary judgment motion, the court must

15 view the evidence in the light most favorable to the non-moving

16 party and draw all justifiable inferences in its favor.  Id. at

17 255.  "Credibility determinations, the weighing of the evidence,

18 and the drawing of legitimate inferences from the facts are jury

19 functions, not those of a judge . . . ruling on a motion for

20 summary judgment . . . ."  Id.

21    A.   Disputed Facts

22      Plaintiff argues that summary judgment should be denied

23 because "Defendant argues specific facts of the case throughout

24 its brief" and "determining ultimate facts is up to the trier of

25 fact."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2:4-7.)[2]

26 ───────────────

27      [2]   Plaintiff appears to have copy-pasted his heading from
the motion that was previously before the court and has
28 improperly titled his response, "Plaintiff's Response to

1  Plaintiff misunderstands the summary judgment standard.

2  Defendant's discussion of the factual record in its motion for

3  summary judgment is not evidence that the motion should be

4  denied, but rather is appropriate in helping the court to

5  identify whether there are disputed material facts that would

6  render resolution of the suit on summary judgment inappropriate.

7          Plaintiff has identified three material facts that he

8  claims are disputed, (see Opp'n to Def.'s Separate Statement of

9  Undisputed Facts ¶¶ 11-13 (Docket No. 19)), however, in each case

10  it appears that plaintiff is actually disputing the legal

11  implications of the fact and not the fact itself.[3]

12          First, plaintiff disputes defendant's statement that

13  "Moe's Process Serving attempted to effectuate substitute service

14  of summons and complaint by leaving a copy with Lewis Scott, who

15  identified himself as plaintiff's father." (Id. ¶ 11.)

16  Plaintiff does not identify what portion of that statement is

17  disputed, either in his response to the statement of undisputed

18  facts or in his opposition to the present motion.  In fact, the

19  declarations that plaintiff cites support the fact that the

20  _____

21  Defendant's Motion to Strike State Law Causes of Action."
    (Docket No. 18.)  To avoid confusion, the court will refer to
22  plaintiff's response as an opposition to defendant's motion for
    summary judgment.
23

24          [3]     It does not appear that plaintiff engaged in any of his
    own discovery in pursuit of his claim.  Most importantly for this
    summary judgment motion, plaintiff's father did not appear at his
25  scheduled deposition.  (Steinheimer Decl. Ex. D.)  Without
    plaintiff's father's explanation of what happened when he was
26  served with plaintiff's complaint, plaintiff appears unable to
    dispute defendant's version of events.  The discovery period
27  closed prior to the filing of this motion for summary judgment
    and neither party has moved to reopen discovery or delay
28  resolution of this motion pending further discovery.

6

1  complaint was served on plaintiff's father.[4]  (Pl.'s Opp'n to

2  Def.'s Mot. for Summ. J. Ex. B ("Scott Lewis Decl.") ¶ 4.)

3  Instead, plaintiff argues that "Defendant did not properly

4  effectuate substitute service within the meaning of the

5  substitute service provision."  (Opp'n to Def.'s Separate

6  Statement of Undisputed Facts ¶ 11.)  This explanation does not

7  dispute that plaintiff's father was served with the complaint in

8  an attempt to effectuate substitute service.  Rather plaintiff

9  merely reiterates that the attempt was unsuccessful.  Plaintiff's

10 dispute regarding the legal implications of the material fact

11 does not mean that the fact itself is disputed, nor does it

12 prevent the court from deciding the legal implications of the

13 fact on a motion for summary judgment.

14       Second, plaintiff disputes defendant's assertion that

15 "Lewis Scott did not tell the process server that Mr. Scott did

16 not live with him."  (Id. ¶ 12.)  Plaintiff cites to the

17 declarations submitted by himself and his father, however,

18 neither declaration addresses this fact.  As defendant has

19 submitted a declaration supporting this fact, (see Abegglen Decl.

20 ¶ 3), the burden has shifted to plaintiff to present specific

21 facts showing that the fact is disputed.  Instead, plaintiff

22 challenges that defendant did not properly effectuate substitute

23 service of process, that plaintiff did not live at the address,

24 and that plaintiff's father did not have a duty to tell the

25 process server that plaintiff did not live with him.  (Opp'n to

26 _____

27      [4]     The court notes that several of plaintiff's claims
   under both the FDCPA and the Rosenthal Act are predicated upon a
   finding that plaintiff's father was served with a copy of the
28 complaint and notified of plaintiff's debts.

7

1  Def.'s Separate Statement of Undisputed Facts ¶ 12.)  Again, none

2  of these objections establishes that the underlying material fact

3  is disputed, only that the legal effect of the fact is uncertain.

4          Third, plaintiff disputes defendant's assertion that

5  "Moe's Process Serving then mailed a copy of summons and

6  complaint to the Culpepper address."  (Id. ¶ 13.)  Again,

7  plaintiff's supporting declarations do not address this issue and

8  plaintiff's explanation that substitute service was not valid and

9  that plaintiff did not live at the address fails to establish

10  that the material fact is disputed.

11          Plaintiff instead argues that the determination of what

12  constitutes harassing, oppressive, or abusive conduct should be

13  made by the trier of fact.  In the absence of disputed material

14  facts, the court may properly determine whether defendant's

15  conduct violates the FDCPA.  See, e.g., Arteaga v. Asset

16  Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010)

17  (finding on summary judgment motion that defendant's phone calls

18  did not rise to the level of harassment under § 1692d).  To hold

19  otherwise would be to prevent the court from ever finding in

20  favor of a defendant on a summary judgment motion.

21      B.   FDCPA Allegations

22          In enacting the FDCPA, Congress found that "[a]busive

23  debt collection practices contribute to the number of personal

24  bankruptcies, to marital instability, to the loss of jobs, and to

25  invasions of individual privacy."  15 U.S.C. § 1692(a).  Further,

26  "[m]eans other than misrepresentation or other abusive debt

27  collection practices are available for the effective collection

28  of debts."  Id. § 1692(c).  Therefore, Congress enacted the FDCPA

1  "to eliminate abusive debt collection practices by debt

2  collectors, to insure that those debt collectors who refrain from

3  using abusive debt collection practices are not competitively

4  disadvantaged, and to promote consistent State action to protect

5  consumers against debt collection abuses."  Id. § 1692(e); see

6  also Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111

7  F.3d 1322, 1324 (7th Cir. 1997) ("A basic tenet of the Act is

8  that all consumers, even those who have mismanaged their

9  financial affairs resulting in default on their debt, deserve

10  'the right to be treated in a reasonable and civil manner.'"

11  (quoting Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir.

12  1982))).

13         The FDCPA is a strict liability statute.  Clark v.

14  Capital Credit & Collection Servs., 460 F.3d 1162, 1176 (9th Cir.

15  2006).  Plaintiff needs to show only one violation of the FDCPA

16  to be entitled to summary judgment.  Gaetano v. Payco of Wis.,

17  774 F. Supp. 1404, 1407 (D. Conn. 1990).  To determine whether

18  the FDCPA has been violated, the court focuses on the debt

19  collector's conduct.  Baker, 677 F.2d at 777 n.4 ("[T]he [FDCPA]

20  is designed to protect consumers who have been victimized by

21  unscrupulous debt collectors, regardless of whether a valid debt

22  actually exists.").

23              1.   Harassing, Oppressive, or Abusive Conduct

24                   (§ 1692d)

25         The FDCPA prohibits a debt collector from "engag[ing]

26  in any conduct the natural consequence of which is to harass,

27  oppress, or abuse any person in connection with the collection of

28  a debt."  15 U.S.C. § 1692d.  The statute provides a

1 non-inclusive list of harassing conduct, including the use of:

2 threats of violence, profane language, publication of a list of

3 debtors, advertising the sale of any debt to coerce payment,

4 causing the phone to ring repeatedly with intent to annoy the

5 debtor, and placing telephone calls without disclosing the

6 caller's identity.  Id.

7      "[C]laims under § 1692d should be viewed from the

8 perspective of a consumer whose circumstances makes him

9 relatively more susceptible to harassment, oppression, or abuse."

10 Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir.

11 1985); see also Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d

12 Cir. 1993).  This standard is similar to that of the "least

13 sophisticated debtor," which the Ninth Circuit applies to other

14 sections of the FDCPA.  See Clark, 460 F.3d at 1171.  This

15 objective standard "ensure[s] that the FDCPA protects all

16 consumers, the gullible as well as the shrewd . . . the ignorant,

17 the unthinking and the credulous."  Clomon, 988 F.2d at 1318-19.

18          There is no evidence to support plaintiff's allegation

19 that defendant engaged in any of the specified behaviors in

20 § 1692d.  Nor does plaintiff specify how the natural consequence

21 of defendant's failed attempt at substitute service was to

22 harass, oppress, or abuse plaintiff.  Accordingly, the court will

23 grant defendant's motion for summary judgment on plaintiff's

24 § 1692d claim.

25          2.  False, Deceptive, or Misleading Representations

26              (§ 1692e and § 1692e(10)

27      The FDCPA prohibits a debt collector from using false

28 means to collect a debt, including the "character, amount, or

1  legal status" of a debt or services that may be rendered in

2  collection of a debt.  15 U.S.C. §§ 1692e(2)(A)&(B).  It

3  additionally forbids "[t]he use of any false representation or

4  deceptive means to collect or attempt to collect any debt or to

5  obtain information concerning a consumer."  Id. § 1692e(10).

6          When "the false nature of the letters is apparent as a

7  matter of law, summary judgment is appropriate."  Newman, 912 F.

8  Supp. at 1377.  If a collection letter, reviewed "through the

9  eyes of the least sophisticated debtor," is false or misleading,

10 then the letter violates the FDCPA.  Swanson v. S. Or. Credit

11 Serv., 869 F.2d 1222, 1225 (9th Cir. 1988).  A debt collector who

12 sends a letter that includes a demand for unlawful charges, and

13 falsely represents the character, amount, and legal status of the

14 debt is in violation of 15 U.S.C. §§ 1692e(2) and (10).  Newman,

15 912 F. Supp. at 1367-69.

16         Here, plaintiff does not plead how defendant's conduct

17 was false, deceptive, or misleading, nor does plaintiff address

18 this specific claim in his opposition to summary judgment.

19 Defendant presents evidence that it made an honest and good faith

20 attempt to subserve plaintiff at his father's house.  The

21 complete lack of contrary evidence or cognizable theory of

22 liability supports a judgment in favor of defendant.

23         3.    Unfair or Unconscionable Means to Collect a Debt

24               (§ 1692f)

25         "A debt collector may not use unfair or unconscionable

26 means to collect or attempt to collect any debt."  15 U.S.C.

27 § 1692f.  Section 1692f includes a noninclusive list of eight

28 categories of conduct that are violations of the statute.  None

11

1 of the specified categories are applicable in the present case.

2         Plaintiff instead claims that "[a] reasonable trier of

3 fact <u>could</u> certainly determine that a debt collector that did not

4 effectuate service properly could behave in an unconscionable

5 manner . . . ."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

6 9:14-17.)  Defendant concedes that "deliberately falling [sic] to

7 serve a collection lawsuit and then taking a default judgment

8 knowing that service was never complete may be unconscionable or

9 unfair."  (Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. at

10 5:24-26.)  As discussed above, however, defendant has presented

11 declarations that it did not know that service was not

12 effectuated when it filed for default judgment.  Plaintiff offers

13 no evidence disputing this fact, but argues that defendant should

14 have known that plaintiff did not live at the Culpepper address

15 because the process server was told that plaintiff was "not

16 available."

17         The court concludes that no reasonable trier of fact

18 would find that defendant's conduct was "unfair or

19 unconscionable" in violation of § 1692f.  Absent evidence that

20 defendant knew that plaintiff did not live at the Culpepper

21 address when it sent a process server to the address, it was not

22 unfair or unconscionable for defendant to rely on Moe's

23 declaration of service when it filed for default judgment in

24 state court.  <u>See</u> <u>Mandelas v. Gordon</u>, 785 F. Supp. 2d 951, 956

25 (W.D. Wash. 2011) (holding that law firm did not act unfairly or

26 unconscionably in seeking entry of default judgment against

27 debtor even though law firm failed to properly serve the debtor

28 where the law firm reasonably relied on process server's facially

1  correct return of service); <u>Dillon v. Riffel-Kuhlmann</u>, 574 F.

2  Supp. 2d 1221, 1223 (D. Kan. 2008) (finding that pursuing a debt

3  collection action without serving the debtor does not violate the

4  FDCPA); <u>Pierce v. Steven T. Rosso, P.A.</u>, No. Civ. 01-1244, 2001

5  WL 34624006, at *2 (D. Minn. Dec. 21, 2001) (finding that failure

6  to comply with service of process rules does not "provide[] a

7  legal basis to sustain a claim that the FDCPA has been

8  violated").  Accordingly, the court will grant defendant's motion

9  for summary judgment on plaintiff's § 1692f claim.

10             4.    <u>Communication with a Third Party in Connection</u>

11                   <u>with the Collection of Any Debt (§ 1692c(b))</u>[5]

12          Section 1692c(b) provides that, with a few exceptions,

13  "a debt collector may not communicate, in connection with the

14  collection of any debt, with any person other than the consumer,

15  his attorney, a consumer reporting agency if otherwise permitted

16  by law, the creditor, the attorney of the creditor, or the

17  attorney of the debt collector."  15 U.S.C. § 1692c(b).

18          Plaintiff has failed to provide any evidence that

19  defendant disclosed information about plaintiff's debt to his

20  father by providing him with a copy of the summons and complaint.

21  In fact, plaintiff stated in his deposition that his father did

22

23          [5]  **WBS: Defendant submitted an opinion letter from the
24  Federal Trade Commission with its declarations but does not
    mention the letter in its motion or reply.  In the letter, the
25  FTC states that the FDCPA's ban on communications with third
    parties is not meant to apply to service of process on a third
26  party.  One of the exceptions to FDCPA liability is reliance on a
    FTC opinion letter, however defendant does not raise this
27  reliance or otherwise address the implications of the letter.
    Defendant does raise this as an affirmative defense in its
28  complaint.  You may want to ask the parties about this in oral
    arguments.**

13

1  not even remember being served with the summons and complaint

2  when plaintiff initially spoke with him.  (Pl.'s Dep. at 25:18-

3  22.)  Even if this information were communicated by the process

4  server, the FDCPA excludes from liability "any person while

5  serving or <u>attempting</u> to serve legal process on any other person

6  in connection with the judicial enforcement of any debt."  15

7  U.S.C. § 1602a(6)(D) (emphasis added).  As plaintiff has not

8  provided any evidence to support him claim and has not disputed

9  any of statements in defendant's declarations, the court will

10  grant defendant's motion for summary judgment on plaintiff's

11  § 1692c(b) claim.

12           5.    <u>Communication with any Person for the Purpose of</u>

13                 <u>Acquiring Location Information (§ 1692b)</u>

14           Section 1692b provides that "[a]ny debt collector

15  communicating with any person other than the consumer for the

16  purpose of acquiring location information about the consumer

17  shall" follow procedures outlined in the statute.  Plaintiff does

18  not allege or present evidence that defendant questioned his

19  father or any other party to obtain information regarding his

20  location.  Accordingly, the court will grant defendant's motion

21  for summary judgment on plaintiff's § 1692b claim.

22           6.    <u>Bona Fide Error Defense</u>

23           Even if defendant were to be found to have violated the

24  FDCPA, defendant presents declarations that the failed service

25  was done in good faith.  (<u>See</u> O'Brien Decl.; Abegglen Decl.)

26  Section 1692k(c) provides:

27       A debt collector may not be held liable in any action
         brought under this title [15 USCS §§ 1692 et seq.] if the
28       debt collector shows by a preponderance of evidence that

the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Debt collectors may assert the "bona fide error" defense as an affirmative defense to avoid liability.[6] "The debt collector must only show that the violation was unintentional, not that the communication itself was unintentional."  Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998).  Because it is an affirmative defense, defendant bears the burden of proof at the summary judgment stage.  Clark, 460 F.3d at 1177.

Defendant presents evidence that it attempted to locate plaintiff by first trying the address that they had on file for plaintiff on Scorpio Drive.  (O'Brien Decl. ¶ 5.)  When defendant discovered that plaintiff did not live on Scorpio Drive, it reviewed plaintiff's credit report, (id. ¶ 6), identified the address listed as plaintiff's most recent address, (id.), and cross-checked the information with Accurint to determine that there were currently residents at the address with plaintiff's last name, (id. ¶ 7).  Defendant concluded that plaintiff may be living with his family and that it was a valid address as to which to attempt service of the summons and complaint.  (Id. ¶ 8.)  After turning the address over to Moe's, defendant was informed that substitute service was successfully served on

---

[6]   Defendant never specifically refers to its good faith efforts as a "bona fide error."  Defendant's answer to the complaint does raise its good faith efforts as an affirmative defense.  (Answer to Compl. ¶ 24 (Docket No. 7).)  The court interprets defendant's "good faith" defense as the equivalent to the "bona fide error" defense.

15

1  plaintiff's father.  (Id. ¶ 9.)  Based on this evidence,

2  defendant's research procedures and conclusion that service was

3  valid appear reasonable.  Plaintiff does not dispute the

4  reasonableness of defendant's procedures or suggest what

5  additional steps defendant should have taken.  Therefore, in the

6  event that defendant's actions were liable under the FDCPA,

7  defendant avoids liability under the bona fide error defense.

8        C.    Rosenthal Act Allegations

9            The purpose of the Rosenthal Act is to "prohibit debt

10 collectors from engaging in unfair or deceptive acts or practices

11 in the collection of consumer debts and to require debtors to act

12 fairly in entering into and honoring such debts, as specified in

13 this title."  Cal. Civ. Code § 1788.1(b).

14            1.    Communication with Member of Debtor's Family about

15                  Consumer Debt (Rosenthal Act § 1788.12(b))

16            Section 1788.12(b) of the Rosenthal Act prohibits the

17 debt collector from:

18     Communicating information regarding a consumer debt to
       any member of the debtor's family, other than the
19     debtor's spouse or the parents or guardians of the debtor
       who is either a minor or who resides in the same
20     household with such parent or guardian, prior to
       obtaining a judgment against the debtor, except where the
21     purpose of the communication is to locate the debtor, or
       where the debtor or his attorney has consented in writing
22     to such communication.

23 Id. § 1788.12(b).  Plaintiff does not discuss this claim at all

24 in his opposition to summary judgment.

25            As stated above, plaintiff has failed to plead or

26 provide evidence that defendant spoke with plaintiff's father

27 regarding his debt.  Accordingly, the court will grant

28 defendant's motion for summary judgment of plaintiff's claim

16

1  under § 1788.12(b) of the Rosenthal Act.

2              2.    <u>Collecting Debt Through Judicial Process When Debt</u>

3                    <u>Collector Knows Service of Process has not Been</u>

4                    <u>Legally Effected (Rosenthal Act § 1788.15(a))</u>

5              The Rosenthal Act provides that "[n]o debt collector

6  shall collect or attempt to collect a consumer debt by means of

7  judicial proceedings when the debt collector knows that service

8  of process, where essential to jurisdiction over the debtor or

9  his property, has not been legally effected."  <u>Id.</u> § 1788.15(a).

10             Defendant cannot avoid liability simply by claiming

11 that it hired an independent process server and thus did not

12 "know" that service of process had not been legally effected.

13 <u>See</u> <u>Bishop v. Silva</u>, 234 Cal. App. 3d 1317, 1322 (6th Dist. 1991)

14 ("In this case, [defendant's] problems were within [its] own

15 control.  [Defendant] 'selected and employed [its] own agent to

16 effect service of process upon [plaintiff].  [It] is necessarily

17 charged with notice of the acts and declarations of [its]

18 agent.'" (quoting <u>Ippolito v. Municipal Court</u>, 67 Cal. App. 3d

19 682, 687 (2d Dist. 1977) (<u>disapproved of on other grounds by</u>

20 <u>Hocharian v. Superior Court</u>, 28 Cal. 3d 714 (1981)))).  It

21 appears that few cases have applied section 1788.15(a), and in

22 those that have there has been proof of actual notice that

23 service was unsuccessful.  <u>See, e.g.</u>, <u>Tourgeman v. Collins Fin.</u>

24 <u>Servs., Inc.</u>, No. 08-CV-1392, 2011 WL 3176453, at *8 (S.D. Cal.

25 July 26, 2011) (finding liability under section 1788.15(a) where

26 debt collector was informed that service of process had not been

27 legally effected and directed the process server to prepare a

28 fraudulent proof of service).

1        As discussed above, defendant's declarations provide

2 evidence that defendant's belief that plaintiff lived on

3 Culpepper Drive was reasonable, that the process server was never

4 informed that plaintiff did not live at the Culpepper Drive

5 address, and that defendant was notified that substitute service

6 was successful.  Defendant has therefore provided sufficient

7 evidence to establish that it did not know that plaintiff was

8 never properly served when it filed for declaratory judgment.

9        Plaintiff provides no evidence that defendant knew that

10 substitute service was not successful, nor does plaintiff provide

11 any explanation of how defendant was put on notice that service

12 was unsuccessful.  Accordingly, the court will grant defendant's

13 motion for summary judgment on plaintiff's claim under

14 § 1788.15(a) of the Rosenthal Act.

15        IT IS THEREFORE ORDERED that defendant's motion for

16 summary judgment be, and the same hereby is, GRANTED.

17 DATED:    January 18, 2012

18

19 _____

WILLIAM B. SHUBB

20 UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

18