UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| LOREN SCOTT,<br><br>      Plaintiff,<br><br>  v.<br><br>KELKRIS ASSOCIATES, INC. dba<br>CREDIT BUREAU ASSOCIATES,<br><br>      Defendant.<br>_____/ | NO. CIV. 2:10-1654 WBS DAD<br><br><u>AMENDED MEMORANDUM AND ORDER<br>RE: MOTION FOR SUMMARY<br>JUDGMENT</u> |

----oo0oo----

        Plaintiff Loren Scott brought this action against defendant Kelkris Associates, Inc., dba Credit Bureau Associates arising out of defendant's allegedly improper service of plaintiff in a debt collection action.  Presently before the court is defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

I.   <u>Factual and Procedural Background</u>

        Defendant was assigned a debt that was allegedly owed by plaintiff to Travis Credit Union.  Defendant filed a debt

1

collection suit against plaintiff in the Superior Court of California for Sacramento County on January 23, 2009. (Compl. 6, Ex. B.) Defendant hired a licensed process server, Moe's Process Serving ("Moe's"), to serve plaintiff with the summons and complaint. (Id. Ex. C; O'Brien Decl. ¶ 4.) The address that defendant had on file for plaintiff was 3660 Scorpio Drive, Sacramento, California. When Moe's attempted to serve plaintiff at this address, the process server was told that plaintiff did not live at that address and the resident did not know plaintiff. (O'Brien Decl. ¶ 5.)

Defendant attempted to find an updated address for plaintiff and identified 8624 Culpepper Drive, Sacramento, California, as the most recent address listed on plaintiff's credit report. (Id. ¶ 6.) Defendant then cross-checked the address through a service called Accurint, which indicated that there were residents at that address with the same last name as plaintiff. (Id. ¶ 7.) Defendant believed that plaintiff was likely living with his family and provided the Culpepper address to Moe's for process serving. (Id. ¶¶ 8-9.)

Plaintiff had previously lived at 8624 Culpepper Drive, (Steinheimer Decl. Ex. B ("Pl.'s Dep.") at 7:17-8:5 (Docket No. 17)), but did not inform Travis Credit Union or defendant when he moved to a new residence, (id. at 37:8-21).

Moe's attempted to serve plaintiff at the Culpepper address. (Abegglen Decl. Ex. A (Docket No. 17).) On the first two attempts there was no one at home. On the third attempt, the process server was told by plaintiff's father, Lewis Scott, that plaintiff was not available at that time. (Id. ¶ 3, Ex. A.)

2

1          The process server attempted to effectuate substitute
2   service of the summons and complaint by leaving a copy of the
3   sommons and complaint with plaintiff's father.  (Id.)  Lewis
4   Scott did not tell the process server that plaintiff did not live
5   with him.  (Id. ¶ 3.)

6          Moe's then mailed a copy of the summons and complaint
7   to the Culpepper address.  (Id. ¶ 4, Ex. A.)  This copy of the
8   summons and complaint was not returned in the mail.  (Id. ¶ 4.)
9   Moe's did not inform defendant that service had not been properly
10  effectuated on plaintiff.  (Id. ¶ 5; O'Brien Decl. ¶¶ 9-10.)
11  Defendant alleges that at the time of the attempted substitute
12  service, it believed that plaintiff lived at the Culpepper
13  address.  (O'Brien Decl. ¶¶ 9-10.)

14         Plaintiff's father never informed plaintiff that he had
15  been served with a lawsuit.  (Pl.'s Dep. at 25:3-7.)  When
16  plaintiff later asked his father whether he had received the
17  lawsuit, his father told him that did not remember receiving the
18  complaint or summons.  (Id. at 25:8-22.)

19         Default judgment was entered against plaintiff on May
20  15, 2009.  (Compl. ¶ 8.)  Plaintiff only learned about the suit
21  on December 10, 2009, when he received a letter from the County
22  of Sacramento Department of Finance informing him of an Earnings
23  Withholding Order obtained against him.  (Pl.'s Dep. at 11:2-22.)
24  Plaintiff then contested the default judgment, which the Superior
25  Court vacated "on the ground of inadvertence and excusable

neglect."[1]  (Friedman Decl. Ex. A (Docket No. 18).)

After learning about the suit brought by defendant in state court, plaintiff discussed the suit with his family, friends, and coworkers.  (Pl.'s Dep. at 33:24-34:17.)

Plaintiff then brought this suit alleging violations of §§ 1692b(1)-(2), 1692c(b), 1692d, 1692e, 1692e(10), and 1692f of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and § 1788.12(b) and § 1788.14(a) of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 et seq.

II. <u>Discussion</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Alternatively, the moving party can demonstrate that the non-moving party cannot produce evidence to support an essential

---

[1] The state court's tentative ruling on plaintiff's motion to set aside the default judgment stated that "[d]efendant has shown he was never served with the summons and complaint."  (Friedman Decl. Ex. A.)

4

element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting then-Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

A. Disputed Facts

Plaintiff argues that summary judgment should be denied because "Defendant argues specific facts of the case throughout its brief" and "determining ultimate facts is up to the trier of fact." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2:4-7.)[2]

---

[2] Plaintiff appears to have copy-pasted his heading from the motion that was previously before the court and has improperly titled his response, "Plaintiff's Response to

5

Plaintiff misunderstands the summary judgment standard. Defendant's discussion of the factual record in its motion for summary judgment is not evidence that the motion should be denied, but rather is appropriate in helping the court to identify whether there are disputed material facts that would render resolution of the suit on summary judgment inappropriate.

Plaintiff has identified three material facts that he claims are disputed, (see Opp'n to Def.'s Separate Statement of Undisputed Facts ¶¶ 11-13 (Docket No. 19)), however, in each case it appears that plaintiff is actually disputing the legal implications of the fact and not the fact itself.[3]

First, plaintiff disputes defendant's statement that "Moe's Process Serving attempted to effectuate substitute service of summons and complaint by leaving a copy with Lewis Scott, who identified himself as plaintiff's father." (Id. ¶ 11.) Plaintiff does not identify what portion of that statement is disputed, either in his response to the statement of undisputed facts or in his opposition to the present motion. In fact, the declarations that plaintiff cites support the fact that the

---

Defendant's Motion to Strike State Law Causes of Action." (Docket No. 18.) To avoid confusion, the court will refer to plaintiff's response as an opposition to defendant's motion for summary judgment.

[3] It does not appear that plaintiff engaged in any of his own discovery in pursuit of his claim. Most importantly for this summary judgment motion, plaintiff's father did not appear at his scheduled deposition. (Steinheimer Decl. Ex. D.) Without plaintiff's father's explanation of what happened when he was served with plaintiff's complaint, plaintiff appears unable to dispute defendant's version of events. The discovery period closed prior to the filing of this motion for summary judgment and neither party has moved to reopen discovery or delay resolution of this motion pending further discovery.

complaint was served on plaintiff's father.[4] (Pl.'s Opp'n to Def.'s Mot. for Summ. J. Ex. B ("Scott Lewis Decl.") ¶ 4.) Instead, plaintiff argues that "Defendant did not properly effectuate substitute service within the meaning of the substitute service provision." (Opp'n to Def.'s Separate Statement of Undisputed Facts ¶ 11.) This explanation does not dispute that plaintiff's father was served with the complaint in an attempt to effectuate substitute service. Rather plaintiff merely reiterates that the attempt was unsuccessful. Plaintiff's dispute regarding the legal implications of the material fact does not mean that the fact itself is disputed, nor does it prevent the court from deciding the legal implications of the fact on a motion for summary judgment.

Second, plaintiff disputes defendant's assertion that "Lewis Scott did not tell the process server that Mr. Scott did not live with him." (Id. ¶ 12.) Plaintiff cites to the declarations submitted by himself and his father, however, neither declaration addresses this fact. As defendant has submitted a declaration supporting this fact, (see Abegglen Decl. ¶ 3), the burden has shifted to plaintiff to present specific facts showing that the fact is disputed. Instead, plaintiff challenges that defendant did not properly effectuate substitute service of process, that plaintiff did not live at the address, and that plaintiff's father did not have a duty to tell the process server that plaintiff did not live with him. (Opp'n to

---

[4] The court notes that several of plaintiff's claims under both the FDCPA and the Rosenthal Act are predicated upon a finding that plaintiff's father was served with a copy of the complaint and notified of plaintiff's debts.

7

1  Def.'s Separate Statement of Undisputed Facts ¶ 12.)  Again, none
2  of these objections establishes that the underlying material fact
3  is disputed, only that the legal effect of the fact is uncertain.
4         Third, plaintiff disputes defendant's assertion that
5  "Moe's Process Serving then mailed a copy of summons and
6  complaint to the Culpepper address."  (Id. ¶ 13.)  Again,
7  plaintiff's supporting declarations do not address this issue and
8  plaintiff's explanation that substitute service was not valid and
9  that plaintiff did not live at the address fails to establish
10 that the material fact is disputed.
11        Plaintiff instead argues that the determination of what
12 constitutes harassing, oppressive, or abusive conduct should be
13 made by the trier of fact.  In the absence of disputed material
14 facts, the court may properly determine whether defendant's
15 conduct violates the FDCPA.  See, e.g., Arteaga v. Asset
16 Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010)
17 (finding on summary judgment motion that defendant's phone calls
18 did not rise to the level of harassment under § 1692d).  To hold
19 otherwise would be to prevent the court from ever finding in
20 favor of a defendant on a summary judgment motion.
21    B.   FDCPA Allegations
22        In enacting the FDCPA, Congress found that "[a]busive
23 debt collection practices contribute to the number of personal
24 bankruptcies, to marital instability, to the loss of jobs, and to
25 invasions of individual privacy."  15 U.S.C. § 1692(a).  Further,
26 "[m]eans other than misrepresentation or other abusive debt
27 collection practices are available for the effective collection
28 of debts."  Id. § 1692(c).  Therefore, Congress enacted the FDCPA

8

"to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Id. § 1692(e); see also Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1324 (7th Cir. 1997) ("A basic tenet of the Act is that all consumers, even those who have mismanaged their financial affairs resulting in default on their debt, deserve 'the right to be treated in a reasonable and civil manner.'" (quoting Baker v. G.C. Servs. Corp., 677 F.2d 775, 777 (9th Cir. 1982))).

The FDCPA is a strict liability statute. Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1176 (9th Cir. 2006). Plaintiff needs to show only one violation of the FDCPA to be entitled to summary judgment. Gaetano v. Payco of Wis., 774 F. Supp. 1404, 1407 (D. Conn. 1990). To determine whether the FDCPA has been violated, the court focuses on the debt collector's conduct. Baker, 677 F.2d at 777 n.4 ("[T]he [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.").

### 1. Harassing, Oppressive, or Abusive Conduct (§ 1692d)

The FDCPA prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute provides a

9

non-inclusive list of harassing conduct, including the use of: threats of violence, profane language, publication of a list of debtors, advertising the sale of any debt to coerce payment, causing the phone to ring repeatedly with intent to annoy the debtor, and placing telephone calls without disclosing the caller's identity. Id.

"[C]laims under § 1692d should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir. 1985); see also Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir. 1993). This standard is similar to that of the "least sophisticated debtor," which the Ninth Circuit applies to other sections of the FDCPA. See Clark, 460 F.3d at 1171. This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." Clomon, 988 F.2d at 1318-19.

There is no evidence to support plaintiff's allegation that defendant engaged in any of the specified behaviors in § 1692d. Nor does plaintiff specify how the natural consequence of defendant's failed attempt at substitute service was to harass, oppress, or abuse plaintiff. Accordingly, the court will grant defendant's motion for summary judgment on plaintiff's § 1692d claim.

    2. False, Deceptive, or Misleading Representations (§ 1692e and § 1692e(10))

The FDCPA prohibits a debt collector from using false means to collect a debt, including the "character, amount, or

10

legal status" of a debt or services that may be rendered in collection of a debt. 15 U.S.C. §§ 1692e(2)(A)&(B). It additionally forbids "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Id. § 1692e(10).

When "the false nature of the letters is apparent as a matter of law, summary judgment is appropriate." Newman, 912 F. Supp. at 1377. If a collection letter, reviewed "through the eyes of the least sophisticated debtor," is false or misleading, then the letter violates the FDCPA. Swanson v. S. Or. Credit Serv., 869 F.2d 1222, 1225 (9th Cir. 1988). A debt collector who sends a letter that includes a demand for unlawful charges, and falsely represents the character, amount, and legal status of the debt is in violation of 15 U.S.C. §§ 1692e(2) and (10). Newman, 912 F. Supp. at 1367-69.

Here, plaintiff does not plead how defendant's conduct was false, deceptive, or misleading, nor does plaintiff address this specific claim in his opposition to summary judgment. Defendant presents evidence that it made an honest and good faith attempt to subserve plaintiff at his father's house. The complete lack of contrary evidence or cognizable theory of liability supports a judgment in favor of defendant.

        3.    Unfair or Unconscionable Means to Collect a Debt (§ 1692f)

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Section 1692f includes a noninclusive list of eight categories of conduct that are violations of the statute. None

11

of the specified categories are applicable in the present case.

Plaintiff instead claims that "[a] reasonable trier of fact <u>could</u> certainly determine that a debt collector that did not effectuate service properly could behave in an unconscionable manner . . . ." (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 9:14-17.) Defendant concedes that "deliberately falling [sic] to serve a collection lawsuit and then taking a default judgment knowing that service was never complete may be unconscionable or unfair." (Def.'s Reply to Pl.'s Opp'n to Mot. for Summ. J. at 5:24-26.) Defendant argues, however, that this was not the case.

Defendant has presented declarations that it did not know that service was not effectuated when it filed for default judgment. Defendant attempted to locate plaintiff by first trying the address that they had on file for plaintiff on Scorpio Drive. (O'Brien Decl. ¶ 5.) When defendant discovered that plaintiff did not live on Scorpio Drive, it reviewed plaintiff's credit report, (<u>id.</u> ¶ 6), identified the address listed as plaintiff's most recent address, (<u>id.</u>), and cross-checked the information with Accurint to determine that there were currently residents at the address with plaintiff's last name, (<u>id.</u> ¶ 7). Defendant concluded that plaintiff may be living with his family and that it was a valid address as to which to attempt service of the summons and complaint. (<u>Id.</u> ¶ 8.) After turning the address over to Moe's, defendant was informed that substitute service was successfully served on plaintiff's father. (<u>Id.</u> ¶ 9.) Based on this evidence, defendant's research procedures and conclusion that service was valid appear reasonable. Plaintiff does not dispute the reasonableness of defendant's procedures or suggest

12

what additional steps defendant should have taken.  Plaintiff merely argues that defendant should have known that he did not live at the Culpepper address because the process server was told that plaintiff was "not available."

The court concludes that no reasonable trier of fact would find that defendant's conduct was "unfair or unconscionable" in violation of § 1692f.  Absent evidence that defendant knew that plaintiff did not live at the Culpepper address when it sent a process server to the address, it was not unfair or unconscionable for defendant to rely on Moe's declaration of service when it filed for default judgment in state court.  See Mandelas v. Gordon, 785 F. Supp. 2d 951, 956 (W.D. Wash. 2011) (holding that law firm did not act unfairly or unconscionably in seeking entry of default judgment against debtor even though law firm failed to properly serve the debtor where the law firm reasonably relied on process server's facially correct return of service); Dillon v. Riffel-Kuhlmann, 574 F. Supp. 2d 1221, 1223 (D. Kan. 2008) (finding that pursuing a debt collection action without serving the debtor does not violate the FDCPA); Pierce v. Steven T. Rosso, P.A., No. Civ. 01-1244, 2001 WL 34624006, at *2 (D. Minn. Dec. 21, 2001) (finding that failure to comply with service of process rules does not "provide[] a legal basis to sustain a claim that the FDCPA has been violated").  Accordingly, the court will grant defendant's motion for summary judgment on plaintiff's § 1692f claim.

///

///

///

    4. <u>Communication with a Third Party in Connection with the Collection of Any Debt (§ 1692c(b))</u>

  Section 1692c(b) provides that, with a few exceptions, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  15 U.S.C. § 1692c(b).

  Plaintiff has failed to provide any evidence that defendant disclosed information about plaintiff's debt to his father by providing him with a copy of the summons and complaint. In fact, plaintiff stated in his deposition that his father did not even remember being served with the summons and complaint when plaintiff initially spoke with him.  (Pl.'s Dep. at 25:18-22.)  Even if this information were communicated by the process server, the FDCPA excludes from liability "any person while serving or <u>attempting</u> to serve legal process on any other person in connection with the judicial enforcement of any debt."  15 U.S.C. § 1602a(6)(D) (emphasis added).  As plaintiff has not provided any evidence to support him claim and has not disputed any of statements in defendant's declarations, the court will grant defendant's motion for summary judgment on plaintiff's § 1692c(b) claim.

    5. <u>Communication with any Person for the Purpose of Acquiring Location Information (§ 1692b)</u>

  Section 1692b provides that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer

14

shall" follow procedures outlined in the statute.  Plaintiff does not allege or present evidence that defendant questioned his father or any other party to obtain information regarding his location.  Accordingly, the court will grant defendant's motion for summary judgment on plaintiff's § 1692b claim.

### C. Rosenthal Act Allegations

The purpose of the Rosenthal Act is to "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title."  Cal. Civ. Code § 1788.1(b).

#### 1. Communication with Member of Debtor's Family about Consumer Debt (Rosenthal Act § 1788.12(b))

Section 1788.12(b) of the Rosenthal Act prohibits the debt collector from:

> Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of the debtor who is either a minor or who resides in the same household with such parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has consented in writing to such communication.

Id. § 1788.12(b).  Plaintiff does not discuss this claim at all in his opposition to summary judgment.

As stated above, plaintiff has failed to plead or provide evidence that defendant spoke with plaintiff's father regarding his debt.  Accordingly, the court will grant defendant's motion for summary judgment of plaintiff's claim under § 1788.12(b) of the Rosenthal Act.

///

### 2. Collecting Debt Through Judicial Process When Debt Collector Knows Service of Process has not Been Legally Effected (Rosenthal Act § 1788.15(a))

The Rosenthal Act provides that "[n]o debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected." Id. § 1788.15(a).

Defendant cannot avoid liability simply by claiming that it hired an independent process server and thus did not "know" that service of process had not been legally effected. See Bishop v. Silva, 234 Cal. App. 3d 1317, 1322 (6th Dist. 1991) ("In this case, [defendant's] problems were within [its] own control. [Defendant] 'selected and employed [its] own agent to effect service of process upon [plaintiff]. [It] is necessarily charged with notice of the acts and declarations of [its] agent.'" (quoting Ippolito v. Municipal Court, 67 Cal. App. 3d 682, 687 (2d Dist. 1977) (disapproved of on other grounds by Hocharian v. Superior Court, 28 Cal. 3d 714 (1981)))). It appears that few cases have applied section 1788.15(a), and in those that have there has been proof of actual notice that service was unsuccessful. See, e.g., Tourgeman v. Collins Fin. Servs., Inc., No. 08-CV-1392, 2011 WL 3176453, at *8 (S.D. Cal. July 26, 2011) (finding liability under section 1788.15(a) where debt collector was informed that service of process had not been legally effected and directed the process server to prepare a fraudulent proof of service).

As discussed above, defendant's declarations provide

evidence that defendant's belief that plaintiff lived on Culpepper Drive was reasonable, that the process server was never informed that plaintiff did not live at the Culpepper Drive address, and that defendant was notified that substitute service was successful.  Defendant has therefore provided sufficient evidence to establish that it did not know that plaintiff was never properly served when it filed for declaratory judgment.

Plaintiff provides no evidence that defendant knew that substitute service was not successful, nor does plaintiff provide any explanation of how defendant was put on notice that service was unsuccessful.  Accordingly, the court will grant defendant's motion for summary judgment on plaintiff's claim under § 1788.15(a) of the Rosenthal Act.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED.  This Order supersedes the court's previous Memorandum and Order Re: Motion for Summary Judgment (Docket No. 26), which was filed in error and is hereby ordered striken.

DATED:  March 23, 2012

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE